UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OSCAR E. OCHOA, ET AL.,          :
                                 :
      Plaintiffs                 :
                                 :
                                 :
      v.                         :    No. 3:08cv00024 (DJS)
                                 :
CITY OF WEST HAVEN, ET AL.,      :
                                 :
      Defendants                 :


MEMORANDUM OF DECISION AND ORDER

The plaintiffs Oscar E. Ochoa ("Ochoa"), Fabriciano Falcon ("Falcon"), Ana B. Falcon ("Ana Falcon") and Lorenzo Lauria ("Lauria")(collectively "the Plaintiffs") bring this action against the City of West Haven ("the City"), Officer William Conlan ("Conlan"), and Officer Jeffrey Gabianelli ("Gabianelli")(collectively "the Defendants"). Ochoa and Falcon allege pursuant to 42 U.S.C. § 1983 that the Defendants violated their rights under the Fourth Amendment to the United States Constitution by conducting an unlawful search and seizure, falsely imprisoning them, and using excessive force against them. These plaintiffs allege that the City is liable for the actions of the defendant Officers by virtue of having created within the West Haven Police Department an atmosphere of lawlessness in which police officers employ excessive force in the belief that such action will be condoned by their superiors. Ochoa and Falcon also allege the following state common law claims against

the Defendants: assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.

The plaintiffs Ana Falcon and Lauria, who are the ex-wife and son of the plaintiff Falcon, allege a state common law claim of negligent infliction of emotional distress against the Defendants.

The Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons that hereafter follow, the Defendants' motion for summary judgment **(Dkt. # 54)** is **GRANTED in part** and **DENIED in part.**

## I. FACTS

On July 19, 2006, at approximately 7:25 p.m., the plaintiff Ochoa drove into the parking lot of a Burger King restaurant located at the intersection of Elm Street and Campbell Avenue in West Haven, Connecticut ("Burger King"). Defendants Conlan and Gabianelli, who at all times relevant to this case were members of the City's Police Department, were working as plain clothes officers doing surveillance in their unmarked police car in the vicinity of the Burger King parking lot at that time. Conlan and Gabianelli observed that Ochoa did not go into Burger King and buy any food or drink but was using his cell phone as he waited in his car. Approximately five minutes after Ochoa was observed using his cell phone, the plaintiff Falcon drove into the Burger

King parking lot and parked one space away from Ochoa's vehicle. The plaintiffs Ana Falcon and Lauria were also in Falcon's vehicle and remained in the vehicle at all times relevant to this case. Ochoa opened the passenger side door of his vehicle and he and Falcon stood between the two vehicles and were looking into a paper bag. Ochoa and Falcon were both dental technicians who had arranged to meet at the Burger King restaurant to exchange dental products.

Having observed Ochoa and Falcon looking into the paper bag, Conlan and Gabianelli drove into the Burger King parking lot and parked their vehicle behind Ochoa's and Falcon's vehicles. The two Officers exited their vehicle, approached Ochoa and Falcon and physically restrained them. Conlan and Gabianelli then searched Ochoa and Falcon and also searched Ochoa's vehicle. At some point, Conlan and Gabianelli told Ochoa and Falcon that the area was a known drug trafficking area. The defendant Police Officers did not handcuff or arrest either Ochoa or Falcon and ultimately told them that they were free to go. The entire incident lasted no more than twenty minutes.

While the parties are in agreement that Conlan and Gabianelli stopped, detained, and searched Ochoa and Falcon, the parties do not agree as to the manner in which those activities were conducted. Ochoa and Falcon both allege that Conlan and Gabianelli restrained and searched them with such force that they

sustained wrist and neck injuries, although neither plaintiff
sought medical treatment in connection with any physical
injuries.  Both also allege emotional distress resulting from the
force applied by Conlan and Gabianelli.  Ochoa alleges that the
defendant Conlan touched Ochoa's genitals at least twice while
conducting the search.

The Defendants maintain that Conlan and Gabianelli conducted
a justified pat down search of Ochoa and Falcon, as well as a
search of Ochoa's vehicle, and that what happened to the
plaintiffs Ochoa and Falcon does not rise to the level of
excessive force so as to constitute a constitutional violation.
The Defendants contend that one of them may have touched Ochoa's
genitals, outside of his clothing, while conducting the pat down
search as an incident to determining whether Ochoa was carrying
something on his person.  Because the Court must "view[] the
record in the light most favorable to the party against whom
summary judgment is sought," In re Novartis Wage & Hour
Litigation, 611 F.3d 141, 150 (2d Cir. 2010), the Court accepts
as true the facts presented by the Plaintiffs for purposes of
determining the pending motion.

Ochoa and Falcon further allege that during the course of
the search conducted by Conlan and Gabianelli, dental products
belonging to each of the two plaintiffs were damaged or
destroyed, and that both of these plaintiffs incurred business

4

losses as a result of the actions of the defendant Police Officers.  The Defendants do not deny that dental products were damaged or destroyed during the course of the search conducted by Conlan and Gabianelli, but contend that damage to property is not relevant for purposes of claims asserted pursuant to the Fourth Amendment.

## II. DISCUSSION

### A.    SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In determining a summary judgment motion, "[t]he Court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004)(internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Mafffucci,* 923 F.2d 979, 982 (2d Cir. 1991).

"The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (quoting *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute concerning a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Central School District*, 963 F.2d 520, 523 (2d Cir. 1992) (quoting *Anderson*, 477 U.S. at 248).

While the nonmoving party may not rest upon mere conclusory allegations or denials to defeat a summary judgment motion, "[s]ummary judgment is inappropriate when the admissible materials produced in opposition to the summary judgment motion make it arguable that the claim has merit." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009)(internal quotation marks omitted). In considering a summary judgment motion, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

FEDERAL CLAIMS

1. UNLAWFUL SEARCH AND SEIZURE

a. Seizure

The plaintiffs Ochoa and Falcon allege in their amended complaint that the defendant Police Officers seized them in violation of the Fourth Amendment.  The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable . . . seizures, shall not be violated . . . ." U.S. Const. amend. IV.  A "seizure" occurs when police detain an individual under circumstances where a reasonable person would believe that he or she is not at liberty to leave. *United States v. Mendenhall,* 446 U.S. 544, 554 (1980).

The parties in this case are in agreement that a seizure did occur. For purposes of Fourth Amendment analysis, the Supreme Court has recognized three types of police-citizen encounters: "(1) a full-scale arrest, which must be supported by probable cause; (2) a brief investigatory detention, which must be supported by reasonable suspicion; and (3) a brief police-citizen encounter, which requires no justification."  *Polk v. District of Columbia*, 121 F. Supp.2d 56, 64 (D.D.C. 2000)(citations omitted). The  third type of encounter clearly is not what occurred in this

7

case and can be ruled out. As to the first type, a full-scale arrest, the defendant Police Officers contend no arrest was made and the Plaintiffs admit in their Local Rule 56 (a)(2) Statement that no arrest occurred. The Court concludes that Conlan and Gabianelli carried out an investigative detention the evening of July 19, 2000. The briefness of the seizure in question, approximately twenty minutes, is consistent with it being an investigatory detention. The facts do not indicate any unnecessary delays on the part of the defendant Police Officers. "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe,* 470 U.S. 675, 686 (1985).

Ochoa and Falcon contend there are no facts that would support a finding of reasonable suspicion justifying their seizure. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000). "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Id.*

at 125. "Even conduct that is as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity." *United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008)(internal quotation marks omitted).

In this case, Conlan and Gabianelli, working as plain clothes officers doing surveillance in an unmarked police car, observed Ochoa pull his car into an area known for drug trafficking and make calls on his cell phone. Although he was parked in a Burger King parking lot, Ochoa did not go into the restaurant. In their affidavits, each of the defendant Officers attests that "[b]ased on my training and experience in narcotics law enforcement, I knew that such conduct is a common practice of drug dealers and/or customers, who often call their customers when trying to make a drug sale." (Dkt. # 54-3, ¶ 8; Dkt. # 54-4, ¶ 8.)

Conlan and Gabianelli then observed a second man, Falcon, pull into the parking lot and park one space away from Ochoa's vehicle. Ochoa opened the passenger side door of his vehicle and he and Falcon stood between the two vehicles and were looking into a paper bag. Again each of the defendant Officers attests that "[b]ased on the totality of the circumstances, including Ochoa's conduct prior to Falcon's arrival, as well as my training and experience, I believed that I was observing a narcotics

transaction taking place." (Dkt. # 54-3, ¶ 11; Dkt. # 54-4, ¶ 11.)

"An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Wardlow*, 528 U.S. at 124 (citation omitted). "Assessment of reasonable suspicion requires an objective evaluation of the totality of the circumstances." *United States v. Manuel*, 64 F. App'x. 823, 825 (2d Cir. 2003)(internal quotation marks omitted).

The defendant Police Officers, who are trained and experienced narcotics officers, assert that the activity they observed was representative of a common practice of drug dealers and/or customers. Furthermore, the defendant Officers point to specific activity that aroused their suspicions, the facts of which are not in dispute. The Court concludes that Conlan and Gabianelli had "a reasonable suspicion supported by articulable facts that criminal activity may be afoot," and, for that reason, could "stop and briefly detain [Ochoa and Falcon] for investigative purposes." *United States v. Sokolow*, 490 U.S. 1, 7 (1989)(internal quotation marks omitted). Consequently, the

Defendants' motion for summary judgment is granted as to the claim of Ochoa and Falcon that there was no lawful basis for their seizure.

The Plaintiffs' Third Amended Complaint also refers to § 1983 false imprisonment claims. A false imprisonment, or false arrest, claim brought under § 1983 is substantially the same as a false imprisonment or false arrest claim under state law. *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). In Connecticut, "[f]alse imprisonment . . . is the unlawful restraint by one person of the physical liberty of another . . . . [I]n the case of a false imprisonment the detention must be wholly unlawful . . . ." *Lo Sacco v. Young*, 20 Conn. App. 6, 19 (1989)(internal quotation marks and citations omitted). Ochoa and Falcon acknowledge that they were not arrested and the Court has concluded that their detention by the defendant Police Officers was lawful. To the extent the allegations of false imprisonment are intended to state claims distinguishable from the illegal seizure claims, summary judgment is also granted as to the claims of false imprisonment.

b. Search

Ochoa and Falcon claim that they were searched absent probable cause. The parties agree that two searches took place: (1) a pat down of Ochoa and Falcon, and (2) a search of Ochoa's car. The Court will consider each search separately. To first

determine whether Ochoa's and Falcon's constitutional rights were violated when they were subjected to a pat down search, the Court looks to *Terry v. Ohio*, 392 U.S. 1 (1968)for guidance. In *Terry* the Supreme Court found that there is an immediate interest of a police officer in taking steps to assure his own safety. "[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27.

As previously indicated, the defendant Police Officers had a reasonable suspicion that the activity they observed was a narcotics transaction. In light of the circumstances the officers had a justifiable reason to believe they may be dealing with armed and dangerous individuals. *See, e.g.*, *United States v. Crespo*, 834 F.2d 267, 271 (2d Cir. 1987)("We often have taken judicial notice that, to substantial dealers in narcotics, firearms are as much tools of the trade as are the commonly recognized articles of narcotics paraphernalia."). Consequently,

Ochoa's and Falcon's constitutional rights were not violated by virtue of the fact that they were subjected to a pat down search.

With regard to the search of Ochoa's car, the Court recognizes that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)(internal quotation marks omitted). It is equally true, however, that "officers who conduct area searches during investigative detentions must do so only when they have the level of suspicion identified in *Terry*." *Id.* at 1050 n. 14.

Although it is clear to the Court that the defendant Officers had a reasonable suspicion that warranted an investigatory stop and pat down of Ochoa and Falcon, the record as to the search of Ochoa's car is quite sparse. The point at which that search occurred during the overall police activity and what the defendant Officers had learned up to that point are unclear. "In evaluating the validity of an officer's investigative or protective conduct under *Terry*, the [touchstone] of our analysis . . . is always the reasonableness in all the

circumstances of the particular governmental invasion of a
citizen's personal security." *Id.* at 1051 (internal quotation
marks omitted). The paucity of facts concerning the search of
Ochoa's car simply does not allow the Court to conclude that the
defendant Officers had the level of suspicion identified in *Terry*
at the time that search was conducted. Consequently, the
Defendants' motion for summary judgment is denied as to the
claim that there was no lawful basis for the search of Ochoa's
car.[1]

c. Destruction of Property

Both Falcon and Ochoa claim damage to their personal
property, specifically dental equipment, caused by the defendant
Police Officers. According to the Plaintiffs, "in the course of
accomplishing the said search, seizure and detention of the
Plaintiffs Oscar E. Ochoa and Fabriciano Falcon, the Defendant
Police Officers threw the dental products or items on the ground
and destroyed them." (Dkt. # 57-1, at 5.) Ochoa calculates his
damages are $9,000 for the equipment, and $48,000 for the
subsequent loss of a customer account. Likewise Falcon calculates

---

[1]Although there is an affidavit from the defendant Conlan in the record indicating that
"Ochoa told me that I could search his car," (dkt. # 54-3, ¶ 15), the Defendants did not include
this in their Local Rule 56 (a) Statement as a "material fact as to which the moving party
contends there is no genuine issue to be tried." L. Civ. R. 56(a)1. "The purpose of the Local
Rule 56(a) Statement is to help the Court determine the facts of a case . . . ." *Giglio v. Derman*,
560 F.Supp.2d 163, 167 (D. Conn. 2008). Because the Defendants did not assert a consensual
search of Ochoa's car in their Local Rule 56(a) Statement, the Court will not consider this
statement in Conlan's affidavit for purposes of the Defendants' motion for summary judgment.

$17,000 for the damaged equipment and $6,000 for a lost customer account.

The Defendants do not deny that they broke Ochoa's and Falcon's equipment. (Dkt. # 60-1, at 4.) Rather, they contend that a claim of damage to property "cannot form the basis of a valid §1983 claim." (Dkt. # 54-5, at 20.) In support of that contention, the Defendants cite to *Hellmann v. Gugliotti*, 279 F.Supp.2d 150 (D.Conn. 2003). The Defendants' reliance on *Hellmann* is misplaced, since the limitation referenced in that case concerns only a claim of excessive force, not any other §1983 claim: "the Fourth Amendment guarantee of freedom from the use of excessive force is a guarantee that citizens shall be free from unreasonable seizures of the *person*." *Id.* at 157.

"The reasonableness requirement of the Fourth Amendment applies not only to prevent searches and seizures that would be unreasonable if conducted at all, but also to ensure reasonableness in the manner and scope of searches and seizures that are carried out, whether pursuant to a warrant or under 'exigent circumstances.'" *Ayeni v. Mottola*, 35 F.3d 680, 684 (2d Cir. 1994). "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search not subject to suppression." *United States v. Ramirez*, 523 U.S. 65, 71 (1998).

Here the Plaintiffs contend that the defendant Officers "threw the dental products or items on the ground and destroyed them." "The plaintiffs' allegations, if proved, may be sufficient for a fact-finder to conclude that the officers' conduct violated clearly established Fourth Amendment law. See . . . *Tarpley v. Greene*, 221 U.S. App. D.C. 227,684 F.2d 1, 9 (D.C. Cir. 1982)('destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment.')" *Ayeni,* 35 F.3d at 689; *see also Martin v. Rodriguez*, 154 F.Supp.2d 306, 314 (D.Conn. 2001)("a search that is unduly destructive or invasive in nature may violate an individual's Fourth Amendment rights").

Because the Court is "required to view the evidence in the light most favorable to the party opposing summary judgment [and] draw all reasonable inferences in favor of that party," *Amnesty America*, 361 F.3d at 122 (internal quotation marks omitted), the Court concludes that the Defendants are not entitled to summary judgment as to the claim that the destruction of Ochoa's and Falcon's property constituted a violation of their Fourth Amendment rights. "Whether the police officers' actions were unreasonable or malicious is a question of fact that cannot be resolved on a motion for summary judgment." *Notice v. Koshes,* 386 F.Supp.2d 23, 27 (D. Conn. 2005).

2. EXCESSIVE FORCE

The Plaintiffs allege that the defendant Officers used
excessive force in carrying out the investigative stop and search
of Ochoa and Falcon.  More specifically, the Plaintiffs contend
that the defendant Police Officers "pushed the Plaintiffs Oscar
E. Ochoa and Fabriciano Falcon on the car, grabbed their wrist
and bent it back causing their shoulders, elbow and wrist to
hurt.  The Defendant Police Officer William Conlan held the
Plaintiffs Oscar E. Ochoa and Fabriciano Falcon on their necks so
hard that they were in serious pain." (Dkt. # 57-1, at 5.) The
Plaintiffs further assert that Conlan "touched the Plaintiff
Oscar E. Ochoa's private parts (genital organs) at least twice
during the said search."[2] (*Id.* at 2.) Both Ochoa and Falcon
indicate they have suffered emotional distress and have undergone
medical procedures and psychological treatment as a result of the
actions of the Defendants.

"[*A]ll* claims that law enforcement officers have used
excessive force . . . in the course of an arrest, investigatory
stop, or other 'seizure' of a free citizen should be analyzed

---

[2]The record contains an affidavit from the plaintiff Falcon indicating that "[t]he Officer
was spitting in my face constantly throughout the search,"  (dkt. # 57-3, at 7, ¶ 11), but the
Plaintiffs did not include this representation in their Local Rule 56 (a) Statement as an "issue of
material fact as to which it is contended there is a genuine issue to be tried." L. Civ. R. 56(a)2.
As was the case with the statement in the defendant Conlan's affidavit concerning consent for a
search of Ochoa's vehicle, the Court will not consider this assertion for purposes of the
Defendants' motion for summary judgment.

under the Fourth Amendment and its 'reasonableness' standard . .

. ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth

Amendment reasonableness standard is an objective one and its

proper application "requires careful attention to the facts and

circumstances of each particular case, including the severity of

the crime at issue, whether the suspect poses an immediate threat

to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by

flight." *Id.* at 396.

In considering the Defendants' argument that they are

entitled to summary judgment as to the Plaintiffs' excessive

force claim, the Court recognizes that "[t]he calculus of

reasonableness must embody allowance for the fact that police

officers are often forced to make split-second judgments – – in

circumstances that are tense, uncertain, and rapidly evolving - -

about the amount of force that is necessary in a particular

situation." *Id.* at 396-97. At the same time, however, "[a]n

unjustified use of force by the police violates the Fourth

Amendment even if it does not cause serious injury." *Williams v.*

*Wood*, 375 F. App'x 98, 101 n. 1 (2d Cir. 2010).

The parties do not agree on the facts as they relate to the

force used by the defendant Officers. As has been noted

previously, the Court is required to view the evidence in the

light most favorable to the non-moving parties, i.e., the

Plaintiffs.  The Court also believes there are unresolved issues of fact as to "whether, in light of the totality of the circumstances faced by the . . . officer, the amount of force used was objectively reasonable at the time." *Amnesty America*, 361 F.3d at 123. It is evident that the crime suspected, a narcotics transaction, was serious.  The extent to which the suspects posed an immediate threat to the officers or others, however, is not equally evident and requires a fact-specific determination. "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America*, 361 F.3d at 123. The Court concludes that the Plaintiffs' excessive force claim is not susceptible to resolution by means of a summary judgment motion.

3. QUALIFIED IMMUNITY

The defendant Police Officers argue that they are entitled to the protection of qualified immunity as to the Plaintiffs' claims of unreasonable search and seizure and excessive force. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne,* 526

U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800,
818 (1982)).

The remaining federal claims against the defendant Officers,
unreasonable search and excessive force, will be determined on
the basis of the objective reasonableness of the actions taken by
those defendants. "Summary judgment on qualified immunity grounds
is not appropriate when there are facts in dispute that are
material to a determination of reasonableness." *Thomas v. Roach*,
165 F.3d 137, 143 (2d Cir. 1999). As to the Plaintiffs' excessive
force claim, the Court has already concluded that there are
unresolved issues of fact material to a determination of
reasonableness. With regard to the unreasonable search claims,
the Court has determined that as to the allegations of property
destruction "[t]he plaintiffs' allegations, if proved, may be
sufficient for a fact-finder to conclude that the officers'
conduct violated clearly established Fourth Amendment law,"
*Ayeni*, 35 F.3d at 689, and that there are unresolved issues of
fact material to a determination of reasonableness as to the
search of Ochoa's vehicle. The factual findings that need to be
made in order to determine objective reasonableness are within
the province of a jury, not the Court. Consequently, summary
judgment on qualified immunity grounds is not appropriate.

4. MUNICIPAL LIABILITY

The Plaintiffs argue that "[t]he Defendant City of West Haven, through its Police Chief, is directly liable and responsible for the acts of Defendant[] Police Officers, because they failed to enforce the laws of the State of Connecticut and regulations of the City of West Haven Police Department pertaining to the use of force by the City of West Haven Police Officers, thereby creating with[in] the West Haven Police Department an atmosphere of lawlessness in which Police Officers employ excessive and illegal force and violence in belief that such acts will be . . . justified by their superiors, Defendant, City of West Haven, and its Police Chief . . . ." (Dkt. # 57-2, at 4-5.)

"[M]unicipalities [are] liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani,* 506 F.3d 183, 190 (2d Cir. 2007) (citing *Monell v. Department of Social Services,* 436 U.S. 658, 691, 694 (1978)). "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality

21

caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell,* 436 U.S. at 690-91). "The fifth element -- the 'official policy' element -- can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'"*Id.* (quoting *Monell,* 436 U.S. at 691).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). The Plaintiffs have produced no evidence which could prove that their claimed injuries were caused by an unconstitutional municipal policy.[3] Rather, in their Local Rule 56(a) Statement, the Plaintiffs appear to argue that the defendant City of West Haven is "vicariously liable for the actions of its Defendant Police Officers William Conlan and Jeffrey Gabianelli[.]" (Dkt. # 57-1, at 6.) "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Accordingly, the Defendants'

---

[3]While the Plaintiffs argue that the defendant City "failed to enforce the laws of the State of Connecticut and regulations of the City of West Haven Police Department pertaining to the use of force by the City of West Haven Police Officers," (dkt. # 57-2, at 4), this conclusory statement does not constitute evidence that could satisfy the requirement of proof imposed by *Tuttle*.

motion for summary judgment is granted as to the Plaintiffs'
claim against the City of West Haven.

C. STATE CLAIMS

1. GOVERNMENTAL IMMUNITY

The Plaintiffs allege state common law claims of assault and
battery, intentional infliction of emotional distress, and
negligent infliction of emotional distress. With regard to all of
these claims, the defendant Police Officers contend they are
entitled to summary judgment on the basis of governmental
immunity. According to the Defendants, the actions of the
Officers were discretionary governmental acts not subject to any
recognized exception to the doctrine of governmental immunity.
While the Court agrees that the actions of the defendant Officers
were discretionary in nature, the Court concludes that one of the
recognized exceptions to the doctrine of governmental immunity
might apply in this case.  Consequently, summary judgment is not
warranted on the basis of governmental immunity.

"Generally, a municipal employee is liable for the
misperformance of ministerial acts, but has a qualified immunity
in the performance of governmental acts. Governmental acts are .
. . discretionary in nature." *Spears v. Garcia*, 263 Conn. 22, 36
(2003)(citation omitted). "[T]he great weight of authority
[holds] that the operation of a police department is a
discretionary governmental function." *Gordon v. Bridgeport*

*Housing Authority*, 208 Conn. 161, 179 (1988). A determination that the actions of the defendant Officers were discretionary does not end the inquiry into the issue of governmental immunity, however. "The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; second, where a statute specifically provides for a cause of action against a municipality or municipal officer for failure to enforce certain laws; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." *Evon v. Andrews*, 211 Conn. 501, 505 (1989)(citations omitted).

"Connecticut courts have held that where, as here, an officer is alleged to have used excessive force against a person, he may be found to have subjected an identifiable person to imminent harm and therefore is not protected from suit by the doctrine of governmental immunity." *Odom v. Matteo*, No. 3:08-cv-1569 (VLB), 2011 U.S. Dist. LEXIS 6198, at *42 (D. Conn Jan. 24, 2011). "A jury could find, based on its determination of whether [the Defendants] used excessive force, that the circumstances made it apparent that [the Defendants'] acts . . . would likely

subject an identifiable person, namely [the Plaintiffs], to imminent harm. Further, it is a question for the jury as to whether or not malice or wantonness existed." *Gilliam v. Town of Windsor Locks*, No. 3:03CV1201 (AVC), 2006 U.S. Dist. LEXIS 12792, at *25-26 (D. Conn. March 7, 2006). The Court concludes that the defendant Officers are not entitled to summary judgment on the basis of governmental immunity.

2. ASSAULT AND BATTERY

"'To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to h[im] and that the application of force or violence was unlawful." *Odom*, 2011 U.S. Dist. LEXIS 6198, at *43 (quoting *Williams v. Lopez*, 64 F.Supp.2d 37, 47 (D. Conn. 1999)). The Court has already concluded that there are unresolved issues of fact as to whether the amount of force used by the defendant Officers was objectively reasonable and thus lawful. Consequently, the Defendants' motion for summary judgment is denied as to the claim of assault and battery.

3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

A plaintiff claiming intentional infliction of emotional distress must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's

conduct was the cause of the plaintiff's distress; and (4) that
the emotional distress sustained by the plaintiff was severe."
*Appleton v. Board of Education*, 254 Conn. 205, 210
(2000)(internal quotation marks omitted). "Liability for
intentional infliction of emotional distress requires conduct
that exceeds all bounds usually tolerated by decent society . . .
." *Id.* (internal quotation marks omitted).

The Defendants contend that " as a matter of law, the
plaintiffs' emotional distress was not severe." (Dkt. # 54-5, at
26.) This argument is based on information about counseling
sessions contained in each plaintiff's Damages Summary. (Id., at
25-26.) The Court does not agree with this contention. "Under
Connecticut law, the fact that a plaintiff does not seek medical
treatment will not, on its own, bar a claim for intentional
infliction of emotional distress." *Brown v. Catania*, No. 3:06cv73
(PCD), 2007 U.S. Dist. LEXIS 19927, at *39 n. 16 (D. Conn. March
21, 2007). Here both Ochoa and Falcon have provided evidence that
they in fact did seek medical treatment for the emotional
distress they are claiming to have suffered.

"Courts considering this issue have held that the use of
excessive force . . . can state a claim for intentional
infliction of emotional distress." *Orellana v. Sencio*, No.
3:04cv843 (JBA), 2006 U.S. Dist. LEXIS 61326, at *10 (D. Conn.
Aug. 29, 2006); *see also McKelvie v. Cooper*, 190 F.3d 58, 63 (2d

Cir. 1999)("the existence of genuine issues of material fact [as to the reasonableness of the defendant police officers' search and detention of the plaintiff] also precluded summary judgment on [the plaintiff's] claim for intentional infliction of emotional distress alleged under Connecticut law"). Since there are material issues of fact in dispute concerning the reasonableness of the defendant Police Officers' actions, summary judgment is denied as to the plaintiffs' intentional infliction of emotional distress claims.

    4. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

    "To state a claim for negligent infliction of emotional distress, [the Plaintiffs] must show that the defendants' 'conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm.'" *Orellana*, 2006 U.S. Dist. LEXIS 61326, at *11 (quoting *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 345 (1978). "The courts have determined that use of excessive force . . . also can state a claim for negligent infliction of emotional distress." *Id.*

    The Defendants contend they are entitled to summary judgment as to the claims of negligent infliction of emotional distress on the basis of governmental immunity. As the Court has concluded that the Defendants are not entitled to summary judgment on the basis of governmental immunity, and since there are unresolved

issues of material fact on the issue of excessive force, summary judgment is denied as to the Plaintiffs' claims of negligent infliction of emotional distress.

5. MUNICIPAL LIABILITY

All of the Plaintiffs' state law claims allege torts committed by the defendant Police Officers. As noted by the Defendants, "[u]nder Connecticut law, a municipality is not vicariously liable for the torts of its employees under the doctrine of respondeat superior. While this immunity may be abrogated by statute, no such statute has been cited by Plaintiff[s]." *Pinnock v. City of New Haven*, 553 F.Supp.2d 130, 145 (D. Conn. 2008)(citation omitted). Additionally, "[t]he Connecticut Supreme Court has clearly held that a political subdivision of the state is immune to suit based on intentional infliction of emotional distress by an employee." *Miles v. City of Hartford*, 719 F.Supp.2d 207, 218 (D. Conn. 2010). The Plaintiffs have provided no support for their state law claims against the defendant City of West Haven and summary judgment is granted as to those claims.

III. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment **(dkt. # 54)** is **GRANTED in part and DENIED in part.**

The Court **GRANTS** the Defendants' motion for summary judgment as to all claims against the Defendant City of West Haven. **All claims against the City of West Haven are hereby DISMISSED.**

The Court further **GRANTS** the Defendants' motion for summary judgment as to the following claims against the Defendants Officer William Conlan and Officer Jeffrey Gabianelli brought pursuant to 42 U.S.C. § 1983: (1) unlawful seizure; (2) false imprisonment; and (3) unlawful search as to the pat down of the Plaintiffs.

The Court **DENIES** the Defendants' motion for summary judgment as to the following claims against the Defendants Officer William Conlan and Officer Jeffrey Gabianelli brought pursuant to 42 U.S.C. § 1983: (1) unlawful search of the Plaintiff Ochoa's vehicle; (2)unreasonable search as to the destruction of the Plaintiffs' personal property; and (3) use of excessive force.

The Court further **DENIES** the Defendants' motion for summary judgment as to the following common law claims against the Defendants Officer William Conlan and Officer Jeffrey Gabianelli:

(1) assault and battery; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress.



**SO ORDERED** this 29th day of July, 2011.


_____/s/ DJS_____

DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE